EDWARD H. KUBO, JR. #2499
United States Attorney
District of Hawaii

RONALD G. JOHNSON # 4532
Chief, Major Crimes Section

MARSHALL H. SILVERBERG # 5111
Assistant U.S. Attorney
Room 6100, PJKK Federal Building
300 Ala Moana Blvd., Box 50183
Honolulu, Hawaii  96850
Telephone:  541-2850

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

FEB 2 3 2006

at ____ o'clock and ____ min. ____ M
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 05-00305 HG |
| | ) | |
| Plaintiff, | ) | MEMORANDUM OF PLEA AGREEMENT |
| | ) | |
| vs. | ) | Date: Feb. 23, 2006 |
| | ) | Time: 11:00 a.m. |
| CHRISTINE TKATCH, | ) | Judge: Kevin S. C. Chang |
| | ) | |
| Defendant. | ) | |
| | ) | |

MEMORANDUM OF PLEA AGREEMENT

Pursuant to Rule 11 of the Federal Rules of Criminal
Procedure, the UNITED STATES OF AMERICA, by its attorney, the
United States Attorney for the District of Hawaii, and the
defendant, CHRISTINE TKATCH and her attorney, JACK SCHWEIGERT,
Esq., have agreed upon the following:

1.    The defendant acknowledges that she has been
charged in the one-count Indictment with violating Title 18,
United States Code, Section 371 by knowingly and intentionally
conspiring with Anthony Swaba to commit an offense against the
United States.  More specifically, the charge alleges:

From on or about November 11, 2004, and continuing thereafter until on or about November 16, 2004, in the District of Hawaii, defendant CHRISTINE TKATCH and Anthony Swaba (who is not a defendant in this Indictment) did knowingly and intentionally conspire to commit an offense against the United States, that is, they knowingly and intentionally conspired to obstruct justice by corruptly influencing the testimony of a witness in an official proceeding, in violation of Title 18, United States Code, Section 1512(c)(2).

THE OBJECT OF THE CONSPIRACY

The object of the conspiracy was to corruptly influence the testimony of "Kevin" or another witness in an official proceeding (that is, Swaba's pending criminal trial in United States v. Swaba, Cr. No. 04-0398 DAE (D. Haw.)), in violation of Title 18, United States Code, Section 1512(c)(2).

OVERT ACTS IN FURTHERANCE OF THE CONSPIRACY

In furtherance of the conspiracy, Swaba committed the following overt acts:

1) On or about November 16, 2004, Swaba wrote a letter to "Kevin" offering him $1,000 to state (falsely) that ammunition found in the car driven by Swaba belonged to him ("Kevin") and that "Swaba had no idea the bullets was there."

2) On or about November 16, 2004, Swaba wrote a letter to TKATCH asking her to give "Kevin" his letter because if "Kevin" agreed to Swaba's request, he (Swaba) would be released from the Federal Detention Center, he would be able to marry TKATCH, and everyone would "be happy."

3) On or about November 16, 2004, Swaba placed both letters in an envelope addressed to TKATCH with the intent of having the Federal Detention Center place the letter in the United States mail.

All in violation of Title 18, United States Code, Section 371.

2

2.    The defendant has read the charge against her contained in the Indictment, and that charge has been fully explained to her by her attorney.

3.    The defendant fully understands the nature and elements of the crime with which she has been charged.

4.    The defendant will enter a voluntary plea of guilty to the one-count Indictment as charged.  In exchange, the government agrees not to seek her indictment for any drug trafficking of which we are aware or for being an accessory after the fact regarding Anthony Swaba's illegal possession of ammunition.

5.    The defendant agrees that this Memorandum of Plea Agreement shall be filed and become part of the record.

6.    The defendant enters this plea because she is in fact guilty of the crime charged in the one-count Indictment.

7.    The defendant understands that the penalties for the offenses to which she is pleading guilty include: (a) up to five years of imprisonment; (b) a fine of up to $250,000; (c) a term of supervised release of not less than two years and not more than three years; and (d) a $100 special assessment.

8.    Defendant admits the following facts and agrees that they are not a detailed recitation, but merely an outline of what happened in relation to the charge to which Defendant is pleading guilty:

3

(a) On October 3, 2004, a car being driven by the defendant's boyfriend, Anthony Swaba, was stopped by the Honolulu Police Department. Tkatch was in the passenger seat at that time.

(b) The police officers later recovered 94 rounds of .22 caliber ammunition from the car's console. On October 4, 2004, Swaba was charged by criminal complaint with being a convicted felon in possession of the ammunition, in violation of 18 U.S.C. § 922(g)(1). Swaba soon realized that because of his criminal record (i.e., having been convicted of at least three prior crimes of violence) he possibly was subject to a mandatory minimum sentence of 15 years imprisonment. He decided to try and have someone else come forward and claim that the ammunition belonged to that person and that he (Swaba) did not possess it. In that manner, Swaba would be creating a false alibi by having another person lie for him, that if believed by a jury would result in him being found not guilty of the charged offense.

(c) On October 9, 2004, while detained at the Federal Detention Center pending trial, Swaba telephoned Tkatch. That telephone conversation was tape recorded by the Federal Detention Center pursuant to its standard policy. During that conversation, Swaba admitted that he stole, from an individual named "Glen," the 94 bullets that were later found by the police

4

officers.  He also stated that he stole the bullets with the intent of selling them.

(d) On October 14, 2004, Swaba was indicted in Cr. No. 04-00398 DAE for being a convicted felon in possession of the 94 rounds of ammunition.  The indictment further charged that because of his criminal record, Swaba was an armed career criminal pursuant to 18 U.S.C. § 924(e).  As such, Swaba faced a mandatory minimum sentence of 15 years imprisonment.

(e) On November 11, 2004, Swaba had another telephone conversation with Tkatch that was tape recorded by personnel at the Federal Detention Center pursuant to their normal policy.  During that conversation, Swaba raised the idea that if he could get someone else to "take the burn for the bullets," then he (Swaba) would be found not guilty.  Swaba's initial proposal was for "Sean" to be the fall guy but then he (Swaba) and Tkatch realized that Sean was a convicted felon himself who could not lawfully possess the ammunition.  Swaba and Tkatch then discussed having "Glen" act as the fall guy.  At the end of the recorded telephone conversation, _Tkatch_ suggested that instead of "Glen," "Kevin" should be the fall guy because "Kevin" had some kind of firearms license.  By the end of this conversation, Swaba and Tkatch had entered into a conspiracy whereby they would try and find someone who would falsely state that the bullets belonged to him and not Swaba.

(f) Shortly thereafter, on or about November 16, 2004, Swaba made overt acts in furtherance of the conspiracy. That is, he wrote two letters that he attempted to mail to Tkatch. In the first letter, he asked Tkatch to forward the second letter to "Kevin." He also complimented Tkatch for thinking of "Kevin" to be the fall guy. He further told Tkatch that if "Kevin" agreed to be the fall guy, then he (Swaba) would be released from the Federal Detention Center, he would be able to marry Tkatch, and everyone would "be happy."

(g) In the second letter, this one addressed to "Kevin," Swaba asked "Kevin" to falsely state that the ammunition found in the car belonged to him and not Swaba and that "Swaba had no idea the bullets was (sic) there." Swaba offered "Kevin" $1,000 for coming forward with the false alibi.

(h) Tkatch did not actually receive the two letters because they were intercepted by officials at the Federal Detention Center who then turned them over to a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives. That agent later confronted Tkatch and she admitted that she had discussed with Swaba the possibility of having a third person accept the responsibility for the ammunition and absolving Swaba at the same time. Tkatch and her prior attorney later signed a cooperation letter where she "admitted that she conspired with Anthony Swaba to obstruct justice by trying to have another

6

individual falsely claim that the ammunition in question belonged to him and that Swaba did not knowingly possess it." The government terminated Tkatch's assistance once we learned that Tkatch had violated the terms of the agreement by using crystal methamphetamine on multiple occasions.

9.   Pursuant to CrimLR32.1(a) of the Local Rules of the United States District Court for the District of Hawaii, the parties agree that the charge to which the defendant is pleading guilty adequately reflects the seriousness of the actual offense behavior and that accepting this agreement will not undermine the statutory purposes of sentencing.

10.   Pursuant to CrimLR32.1(b) of the Local Rules of the United States District Court for the District of Hawaii and Section 6B1.4 of the Sentencing Guidelines, the parties stipulate to the following for the purpose of the sentencing of the defendant in connection with this matter:

(i)   the parties agree that the facts set forth above in paragraph eight are incorporated herein by reference;

(ii) There are no stipulations regarding offense level (except with respect to acceptance of responsibility as set forth below);

(iii) Based upon information presently known to the government, the government agrees not to object to a

7

finding by the probation officer in the presentence report or to a finding by the court that the defendant has clearly demonstrated acceptance of responsibility for the offense, entitling him to a two-level reduction for acceptance of responsibility pursuant to Sentencing Guideline § 3E1.1(a).  The government further agrees that because the defendant has timely notified the government of her intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the court to allocate its resources efficiently, the defendant should be entitled to receive a third-level reduction for "super acceptance" of responsibility pursuant to U.S.S.G. § 3E1.1(b) if her total offense level is 16 or greater; and

(iv)   The defendant understands that notwithstanding its present intentions, and still within the agreement, the government reserves the rights (1) to argue that the defendant has not accepted responsibility and has obstructed justice in the event of receipt of new information relating to those issues, and (2) to call and examine witnesses on those issues in the event that either the probation office finds to the contrary of the government's intentions or the court requests that evidence be presented on that issue.

11.  The parties agree that notwithstanding the parties' agreement herein, the Court is not bound by any

stipulation entered into by the parties but may, with the aid of the presentence report, determine the facts relevant to sentencing.

12.   Pursuant to Section 6B1.4 of the Sentencing Guidelines, there are no facts that are in dispute for the purpose of the sentencing of Defendant in this matter.

13.   The defendant is aware that she has the right to appeal her conviction under Title 28, United States Code, Section 1291 and Federal Rule of Appellate Procedure 4(b).  She also is aware that she has a right to appeal the sentence imposed under Title 18, United States Code, Section 3742(a).  The defendant knowingly waives the right to appeal her conviction and any sentence within the maximum provided in the statute of conviction or the manner in which that sentence was determined on any ground whatsoever, in exchange for the concessions made by the prosecution in this plea agreement.  The prosecution retains its right to appeal the sentence and the manner in which it was determined on any of the grounds stated in Title 18, United States Code, Section 3742(b).

14.   The defendant also waives her right to challenge her conviction and sentence or the manner in which it was determined in any collateral attack, including, but not limited to, a motion brought under Title 28, United States Code, Section

2255, except that the defendant may make such a challenge based on a claim of ineffective assistance of counsel.

15. The defendant understands that pursuant to Guideline 6B1.1(c), this agreement cannot be accepted or rejected by the Court until there has been an opportunity by the Court to consider a presentence report. The defendant understands that the Court will not accept an agreement unless the Court determines that the remaining charges adequately reflect the seriousness of the actual offense behavior and accepting the agreement will not undermine the statutory purposes of sentencing.

16. The defendant understands that by pleading guilty she surrenders certain rights, including the following:

(a) If the defendant persisted in a plea of not guilty to the charges against her she would have the right to a public and speedy trial. The trial could be either a jury trial or a trial by a judge sitting without a jury. The defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the prosecution and the judge all must agree that the trial be conducted by the judge without a jury.

(b) If the trial is a jury trial, the jury would be composed of twelve laypersons selected at random. The defendant and her attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual

bias or other disqualification is shown, or without cause by exercising peremptory challenges.  The jury would have to agree unanimously before it could return a verdict of either guilty or not guilty.  The jury would be instructed that the defendant is presumed innocent, and that it could not convict her unless, after hearing all the evidence, it was persuaded of her guilt beyond a reasonable doubt.

(c) If the trial is held by a judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not he or she was persuaded of the defendant's guilt beyond a reasonable doubt.

(d) At a trial, the prosecution would be required to present its witnesses and other evidence against the defendant.  The defendant would be able to confront those prosecution witnesses and her attorney would be able to cross-examine them.  In turn, the defendant could present witnesses and other evidence on her own behalf.  If the witnesses for the defendant would not appear voluntarily, she could require their attendance through the subpoena power of the Court.

(e) At a trial, the defendant would have a privilege against self-incrimination so that she could decline to testify, and no inference of guilt could be drawn from her refusal to testify.

11

17.  The defendant understands that by pleading guilty, she is voluntarily, knowingly, and intelligently waiving all of the rights set forth in the preceding paragraph.  The defendant's attorney has explained those rights to her, and the consequences of the waiver of those rights.

18.  The defendant and her attorney acknowledge that no threats, promises, or representations have been made, nor agreement reached, other than those set forth in this Agreement, to induce the defendant to plead guilty.

19.  Should the Court refuse to accept this agreement, it is null and void and neither party shall be bound thereto. The parties understand that the Court's rejection of any stipulation between the parties does not constitute a refusal to accept this agreement since the Court is expressly not bound by stipulations between the parties.

20.  The defendant further agrees to be bound by this Memorandum of Plea Agreement and not to seek a withdrawal of the guilty plea that she intends to enter or to withdraw from this Memorandum of Plea Agreement.

21.  If, after signing this Memorandum of Plea Agreement, the defendant nonetheless decides not to plead guilty as provided herein, or if the defendant pleads guilty but subsequently makes a motion before the Court to withdraw from the Plea Agreement and the Court grants that motion, the defendant

12

agrees that any statements that she makes to law enforcement
agents or to the United States Attorney's Office for the District
of Hawaii may be used against her in any trial brought against
the defendant.  The defendant further agrees that any admission
of guilt that she makes by signing this Plea Agreement or that
she makes while pleading guilty as set forth in this agreement
may be used against her in a subsequent trial if the defendant
later proceeds to trial.  The defendant voluntarily, knowingly,
and intelligently waives any protection afforded by Rule 11(f) of
the Federal Rules of Criminal Procedure and Rule 410 of the
Federal Rules of Evidence regarding the use of statements made in
this Plea Agreement or during the course of pleading guilty when
the guilty plea is later withdrawn.

        22.  The defendant understands that the prosecution
will apprise the Court and the United States Probation Office of
the nature, scope and extent of the defendant's conduct regarding

\ \

\ \

\ \

\ \

\ \

the charges against her, related matters, and any matters in
aggravation or mitigation relevant to the issues for sentencing.

DATED:  Honolulu, Hawaii, _____Feb 23, 2006_____.

AGREED:

EDWARD H. KUBO, JR.
United States Attorney
District of Hawaii

_____
CHRISTINE TKATCH
Defendant

_____
RONALD G. JOHNSON
Violent Crimes Section Chief

_____
JACK SCHWEIGERT, Esq.
Attorney for Defendant
CHRISTINE TKATCH

_____
MARSHALL H. SILVERBERG
Assistant U.S. Attorney

14